## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-24648-CIV-MORENO/LOUIS

JUANA PINERO,

      Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS MATTER** is before the Court on Plaintiff Juana Pinero's Motion for Summary Judgement (ECF No. 14) and Defendant Andrew Saul's, Commissioner of Social Security Administration, Motion for Summary Judgement (ECF No. 15). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge, for a Report and Recommendation (ECF No. 2). Upon consideration of the briefing and the record, the undersigned **RECOMMENDS** that Plaintiff's Motion (ECF No. 14) be **DENIED** and Defendant's Motion (ECF No. 15) be **GRANTED.**

### I. PROCEDURAL BACKGROUND

This case involves an appeal of Plaintiff Juana Pinero's application for a period of disability and disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. § 401, *et seq*. Plaintiff claims disability based on memory loss and depression beginning on March 13, 2017 (R. 93). Following the denial of her claim at both the initial and reconsideration levels, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ

1

James Cole Cartledge on September 25, 2018 (R. 21). Plaintiff, who was represented by counsel, testified at the hearing, as did a vocational expert ("VE"). On November 21, 2018, the ALJ issued his unfavorable decision, finding that Plaintiff was not disabled from the alleged onset date through the date of the decision (R. 21-30). Plaintiff sought review of the ALJ's decision, but her request for review was denied by the Appeals Council (R. 12). Plaintiff now seeks judicial review of the ALJ's decision. Plaintiff has exhausted her administrative remedies, and, as such, this case is ripe for review.

## II.     STANDARD OF REVIEW

### A.  Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143,

1145-46 (11th Cir. 1991).

## B.  Regulatory Framework

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work found in the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

## III.    THE RECORD

## A.  Plaintiff's Testimony

Plaintiff was 59 at the time of the hearing (R. 46). She was born in Cuba, where she completed schooling through college (R. 39). Plaintiff moved to the United States in 1995 and began working at Walmart as a Customer Service Representative, which required her to process and take returns of purchases, including lifting and carrying heavy items like televisions and microwaves (R. 40).

Plaintiff was fired from Walmart in 2017 in connection with a theft of store merchandise (R. 43). Plaintiff described her participation as failing to properly check returned merchandise and returning too much money to the alleged thief (*id.*). Plaintiff explained that it was Walmart's policy that if any employee participated, whether knowingly or not, in theft of merchandise they would be terminated (*id.*). However, Plaintiff testified that she was called back to work four days after she was terminated and, at that time, she could not return to work due to nerve pain that prevented her from getting out of bed (*id.*). Plaintiff testified that her 2017 error checking back returned merchandise was not the only reason she was terminated; rather she explained that she had a history of making mistakes such as returning the wrong amount of change, reporting late to work, and making errors in processing returns (R. 60).

Plaintiff lives with her husband who financially supports her with the help of her adult children (R. 47). Plaintiff began experiencing problems in her left hip in 2017 however she was advised that she did not require surgery (R. 56). Plaintiff testified that she had also experienced loss of memory and loss of consciousness in 2016 (R. 64).

**B.  Summary of Relevant Medical Evidence**

**1. Dr. Maribel Aguilera**

Dr. Maribel Aguilera treated Plaintiff for her mental impairments from 2016 through 2018. In May 2016, Dr. Aguilera diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder (R. 381-83). Overall, the majority of Dr. Aguilera's treatment notes indicate that treatment was working, and Plaintiff displayed improvement of her symptoms (R. 376-78, 381, 385-86). Dr. Aguilera noted that on two occasions that Plaintiff reported a decrease in mood stability, motivation, participating, and concentration (R. 380, 385).

On September 14, 2018, Dr. Aguilera completed a "Mental Medical Source Statement of Ability to do Work-Related Activities" form, in which she was to indicate Plaintiff's ability to do

certain work-related activities and identify any limitations in those areas in a range from none to extreme (R. 473-74). Dr. Aguilera indicated that Plaintiff was extremely limited in her ability to carry out instructions, meaning that there was no useful ability to function in that area (R. 473). Dr. Aguilera also opined that Plaintiff was extremely limited in the area of social functioning in work-related settings, specifically, that she was limited in her ability to interact appropriately with the public, supervisors, and co-workers (R. 474).

### 2.  Dr. Juan Salinas

In January 2018, Plaintiff first presented to Dr. Juan Salinas for a primary care follow up with complaints of hypertension and major depressive disorder (R. 453). At the initial evaluation, Dr. Salinas noted that Plaintiff reported pain in her right leg accompanied by difficulty in walking and that Plaintiff previously had a left inguinal hernia repair (R. 445). Plaintiff denied limited joint mobility, muscle pain, stiffness, or tenderness (*id*.). Plaintiff was diagnosed with pain in the right leg and a high body mass index (greater than 30) (R. 446). Dr. Salina's treatment plan called for rest and icing the affected areas for three days (R. 447). In August 2018, Plaintiff reported pain in her left hip and right knee but denied limited joint mobility, muscle pain or stiffness (R. 450). Dr. Salinas diagnosed Plaintiff with Type 2 diabetes mellitus without complications, and recommended that Plaintiff lower her blood sugar, lose weight, and begin an exercise routine (R. 451). Dr. Salinas issued a prescription for an MRI of Plaintiff's left hip (*id*.). The following month, Plaintiff returned for a follow up and reported that her left hip pain and right knee pain had worsened (R. 453). The results of the MRI revealed joint effusion and/or synovial proliferation of the left hip joint; however, the findings were not remarkable, and the only impression is that the findings were consistent with arthritis and further scans could be necessary (R. 464).

On September 14, 2018, Dr. Salinas completed a form titled "Medical Source Statement of Ability to Work-Related Activities (Physical)," in which he opined that Plaintiff could only perform

a full range of sedentary work (R. 479-84). Dr. Salinas indicated that Plaintiff was limited in that she could lift no more than ten pounds, and, in an 8-hour workday Plaintiff could sit, stand, and walk for up to 10 minutes at a time without interruption (R. 480).

**C.  ALJ's Decision**

After reviewing the evidence and conducting the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled and denied her application for DIB (R. 21-30).

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021 (R. 23). Plaintiff had not engaged in substantial gainful activity since February 18, 2017, the alleged onset date (*id.*). At step two, the ALJ determined that Plaintiff has the following severe impairments: depressive disorder, bipolar disorder, anxiety, obsessive compulsive disorders, and diabetes mellitus (*id.*). The ALJ noted that Plaintiff had a history of hypertension, obesity, and memory loss; however, the impairments did not significantly effect Plaintiff's ability to perform basic work activities (R. 24).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the Listings under 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.*). The ALJ found that the Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, limited to occupations of simple routine and repetitive tasks requiring occasional interaction with the public, co-workers, and supervisors, and limited to occasional work-setting changes (R. 25). In making this determination, the ALJ found that although Plaintiff's medical records indicate that she has a history of mental disorders, the severity of her symptoms and limitations was contradicted by the evidence in the record (R. 26).

In making the RFC determination, the ALJ addressed the medical opinions and treatment notes in the record. The ALJ assigned little weight to the opinion of Dr. Salinas, who opined that

Plaintiff may only perform a full range of sedentary work, because the opinion was unsubstantiated by the medical records and treatment notes in the record (R. 27). Likewise, the ALJ accorded little weight to the opinion of Dr. Aguilera, who opined that Plaintiff has extreme limitations caused by her mental impairments because the opinion is inconsistent with the record (R. 28). The ALJ noted that the "only reason" Plaintiff was unemployed is because she was fired for stealing from her work (*id*.). The ALJ also explained that Plaintiff's statements to physicians contradicted Plaintiff's contentions regarding the severity of her impairments (*id*.). The ALJ assigned great weight to the opinion of the State agency reviewing physician who indicated in a form titled "Disability Determination Explanation," that Plaintiff could perform a reduced range of light work because the opinion was supported by the record evidence (R. 27).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (R. 28). Before continuing to step five, the ALJ determined that because Plaintiff was 57 years old at the time of the application, she is considered to be a person of advanced age, for purposes of disability determination (*id*.). At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there were three jobs that she could perform in the national economy: day worker, linen room attendant, and kitchen helper (R. 29).

## IV.   DISCUSSION

Plaintiff argues that that the ALJ committed reversible error in denying her application for disability benefits. More specifically, these errors include the ALJ's failure to: (1) properly assess the opinions of Dr. Salinas and Dr. Aguilera; (2) support his RFC finding with substantial evidence; and (3) properly assess Plaintiff's alleged symptoms and limitations (ECF No. 14 at 5). In opposition, Defendant avers that the ALJ properly evaluated the medical opinions in the record, the substantial evidence supports the ALJ's RFC determination, and the ALJ properly assessed Plaintiff's statements of her symptoms and found that they were inconsistent with the records.

### A. Evaluation of Medical Opinions

In determining whether a claimant is disabled, the ALJ evaluates every medical opinion received. *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 749 (11th Cir. 2018). "The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for those decisions, so as to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764–65 (11th Cir. 2014). The relevant social security regulations provide that "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "When weighing each medical opinion, the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization."[1] *Muniz v. Comm'r of Soc. Sec.*, 716 F. App'x 917, 919 (11th Cir. 2017) (citing 20 C.F.R. § 416.927(c)); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017).

Furthermore, an ALJ must give the opinion of a claimant's treating physician "substantial or considerable" weight unless good cause exists not to. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (citation omitted). The ALJ must state with particularity the weight given to different medical opinions and the reasons,

---

[1] Because Plaintiff filed her claim for social security benefits prior to March 27, 2017, the applicable rules for evaluating medical evidence are set forth in 20 C.F.R. §§ 404.1527.

therefore. *Id.*

Plaintiff seeks reversal of the ALJ's opinion on the grounds that the ALJ applied the wrong standard because the ALJ did not articulate good cause to assign little weight to the substantiated opinions of Dr. Aguilera and Dr. Salinas regarding her impairments and limitations (ECF No. 14 at 5). However, because substantial evidence supports the ALJ's finding that the treating sources' opinions were inconsistent with their treatment notes, reversal is not recommended on this ground.

### 1. Dr. Aguilera

Dr. Aguilera completed a "Mental Medical Source Statement of Ability to do Work-Related Activities" (R. 473-74). Therein, Dr. Aguilera opined that Plaintiff is extremely limited as a result of her mental impairments. Specifically, Dr. Aguilera found Plaintiff had marked limitations in understanding and carrying out both simple and complex instructions and in making work-related decisions (R. 473). Dr. Aguilera also opined that Plaintiff is extremely limited in the area of social functioning in work-related settings, specifically, that she is limited in her ability to interact appropriately with the public, supervisors, and co-workers (R. 474). The ALJ assigned little weight to these opinions, finding them inconsistent with the record in this case (R. 28). The ALJ noted that the only reason Plaintiff was unemployed at that time was not because she was so impaired she could not work, but, rather, she was unemployed because she had been terminated for participating in a theft of merchandise (R. 28).

Plaintiff argues that remand is warranted under the circumstances because the ALJ did not articulate good cause for discounting the opinions as his reasoning rests exclusively on Plaintiff's alleged participation in criminal activity (which Plaintiff contests) (ECF No. 14 at 5-6). This contention is unsupported by the ALJ's opinion in which the ALJ did not rely solely on Plaintiff's alleged criminal behavior, but rather upon the ALJ's determination that Dr. Aguilera's medical opinions were inconsistent his treatment notes, which tended to show improvement of Plaintiff's

symptoms. The ALJ cited to several of Dr. Aguilera's treatment notes, which indicated that Plaintiff consistently reported feeling depressed and anxious, but that with treatment and medications, Plaintiff's symptoms were improving (R. 26). For example, in February, September, and December 2017, and March 2018, Plaintiff showed significant improvement in her symptoms (R. 437-39, 442), and otherwise showed some improvement in other visits those years (R. 440-41). The ALJ also relied on Dr. Aguilera's notes memorializing Plaintiff's reports of an increase in energy, mood stability, and in motivation and participation (R. 26, 442). Because the ALJ's determination that Dr. Aguilera's opinions were inconsistent with her own treatment notes, the Court is satisfied that the ALJ articulated good cause for assigning those opinions little weight and reversal is not warranted on this ground. *Marshall v. Comm'r, Soc. Sec. Admin.*, 660 F. App'x 874, 876 (11th Cir. 2016) (affirming ALJ's decision to discount a treating physician's opinion that the claimant was incapable of gainful employment because the opinion was inconsistent with the physician's own treatment notes that the claimant was "doing good").

### 2. Dr. Salinas

On September 14, 2018, Dr. Salinas completed a form titled "Medical Source Statement of Ability to Work-Related Activities (Physical)," in which he opined that Plaintiff could only perform a full range of sedentary work (R. 479-84). Dr. Salinas indicated that Plaintiff was limited in that she could lift no more than ten pounds; and in an 8-hour workday, Plaintiff could sit, stand, and walk for up to 10 minutes at a time without interruption (R. 480). The ALJ assigned little weight to these opinions because they were inconsistent with Dr. Salinas' own treatment notes (R. 27).

Plaintiff argues that the ALJ erred in his assessment of Dr. Salinas' opinions regarding Plaintiff's physical impairments and their limiting effects. Plaintiff faults the ALJ for ignoring Dr. Salinas' diagnosis of pain in the right knee and left hip. As a preliminary matter, a diagnosis alone does not constitute a medical opinion nor does Plaintiff point to any opinion by Dr. Salinas (or any

other physician) regarding Plaintiff's knee and hip pain.[2] *Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (holding that the ALJ did not err in failing to consider certain medical records and diagnoses therein because they did not constitute medical opinions where they did not reflect what activities the claimant could or could not perform). To the extent Plaintiff challenges the ALJ's finding that Dr. Salinas' opinions in the medical source treatment form are inconsistent with Dr. Salinas' own treatment notes, that challenge is without merit.[3] In his opinion, the ALJ cited to Dr. Salinas' treatment notes dated August 9, 2018, in which Dr. Salinas indicated that upon physical inspection, Plaintiff presented with normal palpation of her fingers, normal gait and normal stability (R. 27, 450). In those same notes, Dr. Salinas diagnosed Plaintiff with Type 2 diabetes mellitus without complications (R. 450). Dr. Salinas recommended that as part of her treatment, Plaintiff take one medication, increase her physical activity, and improve her diet (R. 462). The ALJ explained that Dr. Salinas' recommended conservative treatment plan suggested that Plaintiff's symptoms were not as severe as Plaintiff claims (R. 27). *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) (affirming the ALJ's decision because the ALJ had good cause for assigning less weight to a treating source's opinion of total disability where the source's treatment plan was conservative and of routine nature). Because the ALJ has articulated good cause for assigning little weight to Dr. Salinas' opinions, reversal is not recommended under the circumstances.

---

[2] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2).

[3] It is worth noting that a significant portion of Plaintiff's argument is dedicated to reciting various medical records by Dr. Nivea Ribas and Dr. Leonicio Sanchez (neither of which advanced a medical opinion at issue in Plaintiff's Motion) without squarely addressing the issue before the Court: whether the ALJ articulated good cause for assigning little weight to the opinions of Dr. Aguilera and Dr. Salinas. Nor does Plaintiff argue that the ALJ erred in failing to consider those records, and, indeed, upon review of the opinion it is evident that the ALJ considered both Sanchez's and Ribas' treatment notes (R. 27).

**B.  Substantial Evidence Supports the ALJ's RFC Determination**

Plaintiff further contends that reversal is necessary because the ALJ's RFC determination is not supported by substantial evidence (ECF No. 14 at 18). Plaintiff argues that the ALJ's RFC determination is not sound because the ALJ's "'paragraph B' [of SSR 96–8p] criteria assessment is woefully deficient" (*id*. at 19).

SSR 96–8p provides:

> The psychiatric review technique described in 20 C.F.R. 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF

SSR 96-8p. The functional areas to be considered under paragraph B include understanding, remembering, or applying information; interacting with others; concentrating, persistence or maintaining pace; or adapting or managing themselves (*id*.). Here, the ALJ determined that Plaintiff's depressive, anxiety, and obsessive-compulsive disorders cause moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace (R. 25). The ALJ also found that Plaintiff experiences moderate limitations in understanding, remembering, or applying information and mild limitations in adapting or managing herself (*id*.).

Plaintiff's challenge to the ALJ's RFC determination is misplaced because the functional areas to be considered in paragraph B are used to rate the severity of the alleged mental impairments and, being distinct from the RFC assessment at step four, have no bearing on the RFC determination. *See Carswell v. Saul*, No. CV 119-129, 2020 WL 4049985, at *6 (S.D. Ga. July 20, 2020), *report and recommendation adopted*, No. CV 119-129, 2020 WL 4910351 (S.D. Ga. Aug. 20, 2020). Moreover,

the ALJ's RFC determination adequately accounted for Plaintiff's mental impairments and is supported by substantial evidence. Dr. Aguilera's treatment notes from 2017 and 2018 show a general trend of improvement of Plaintiff's symptoms related to her mental impairments (R. 26). The ALJ also discussed that in September 2018, Dr. Salinas noted that Plaintiff denied experiencing any headaches, nervousness, sadness, hallucinations, suicidal thoughts, or stress (R. 26, 445). Moreover, in making his RFC determination, the ALJ considered that the State agency's reviewing physician found that, although Plaintiff was moderately limited due to her mental impairments, such limitations were not so severe as to preclude her from working (R. 27, 110-12). Accordingly, the ALJ's finding that Plaintiff's mental impairments did not render Plaintiff unable to work is supported by substantial evidence in the record.

Plaintiff further contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to take into account Plaintiff's hip pain. In support of her contention, Plaintiff cites to a 2018 MRI ordered by Dr. Salinas that showed "joint effusion and/or proliferation effects of the left hip joint," and circumferential tearing and scarring (ECF No. 14 at 18; R. 464). However, merely being diagnosed with a condition does not automatically equate to a work-related limitation that an ALJ must include in his RFC determination; rather, Plaintiff must meet the burden of showing that her hip pain precludes her from working and thus the ALJ erred in failing to consider that impairment. *See Alfarano v. Saul*, No. 8:19-CV-2022-T-30CPT, 2020 WL 4808746, at *4 (M.D. Fla. Aug. 1, 2020), *report and recommendation adopted sub nom. Alfarano v. Comm'r of Soc. Sec.*, No. 8:19-CV-2022-T-30CPT, 2020 WL 4785455 (M.D. Fla. Aug. 18, 2020). Plaintiff has not met this burden. Apart from directing the Court to the MRI and reports of her subjective complaints of hip pain, Plaintiff has not identified any evidence that indicates her hip pain precludes her from working or causes any limitations to work-related activities. *Steele v. Saul*, No. CV 1:19-00728-N, 2020 WL 7647483, at *10 (S.D. Ala. Dec. 23, 2020) (affirming the ALJ's decision explaining that

citing to medical evidence which showed claimant had certain impairments did not obviate the claimant's burden to show that those impairments precluded the claimant from working). For these reasons, the ALJ did not err in failing to consider Plaintiff's hip pain in his RFC determination, and reversal is not warranted.

## C. Assessment of Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in assessing her subjective complaints and finding them inconsistent with the record (ECF No. 14 at 20). To support this assertion, Plaintiff contends that her complaints regarding her symptoms and limitations have been consistent throughout the record, and the ALJ did not provide good cause for discounting them (*id*.).

When a plaintiff attempts to prove disability based on his subjective complaints, she must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of her alleged symptoms, or (2) evidence establishing that her medical condition could reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes that she has an impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *Id*. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). If such reasons are not given, then the claimant's subjective pain testimony must be accepted as true. *Id*. at 1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id*.

Plaintiff does not argue that the ALJ erred in finding that her complaints regarding the severity

of her pain were not entirely consistent with medical evidence in the record. Rather, Plaintiff chiefly argues that her complaints of pain have been consistent since the filing of her application for benefits through the hearing. However, that is not the pertinent inquiry in this case. Instead, the Court must determine whether the ALJ's finding that Plaintiff's complaints concerning the intensity and severity of her pain were inconsistent with the evidence is supported by substantial evidence. I find that it is.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence in the record (R. 27). The ALJ explained that as recently as September 2018, Plaintiff denied experiencing migraines, dizziness upon standing, nervousness, sadness, hallucinations, or stress (R. 28). The ALJ also explained that Plaintiff's symptoms could not have been as limiting in light of Dr. Aguilera's reports that Plaintiff's mental health was improving in 2017 and 2018 (R. 28, 437-39, 442). With respect to the severity of Plaintiff's physical ailments, the ALJ noted that Dr. Salinas' treatment notes dated August 2018 memorialize Plaintiff's complaint of left hip pain at a level 6/10, and denied limited joint mobility, muscle pain, stiffness, tenderness, difficulty walking, or pain in the right lower extremities; and Plaintiff reported no change in appetite, changes in weight, or weakness (R. 28, 449-451). Because the ALJ supported his determination with substantial evidence from Plaintiff's treating sources, the ALJ properly assessed and considered Plaintiff's symptoms and limitations, and remand is not warranted on this ground.

## V.   RECOMMENDATION

For the forgoing reasons, the undersign respectfully **RECOMMENDS** that Plaintiff's Motion (ECF No. 14) be **DENIED** and Defendant's Motion (ECF No. 15) be **GRANTED.**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Federico A. Moreno, United States District Court Judge for the Southern District

of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

      **RESPECTFULLY SUBMITTED** in Chambers this on this 18th day of January, 2021.

**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**